# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

**UNITED STATES OF AMERICA,**

      **Plaintiff/Respondent,**

**v.**                                 **No. 14-cv-0865 MCA/SMV**
                                           **09-cr-2258 MCA**

**BILL MELOT,**

      **Defendant/Petitioner.**

## <u>MAGISTRATE JUDGE'S</u><br><u>PROPOSED FINDINGS AND RECOMMENDED DISPOSITION</u>

THIS MATTER is before me on Defendant/Petitioner (hereinafter "Petitioner") Bill Melot's Motion to Vacate Judgment and Sentence Pursuant to 28 U.S.C. § 2255 [CV Docs. 1, 2; CR Docs. 316, 317][1] ("Motion"), filed on September 23, 2014. Plaintiff/Respondent (hereinafter "the Government") filed a Response [CV Doc. 14; CR Doc. 326] on November 19, 2014. Petitioner filed a Reply [CV Doc. 15; CR Doc. 327] on December 9, 2015. Petitioner then filed various amendments to his Motion, which I have construed as supplements. [CV Docs. 19, 20, 22, and 23; CR Docs. 330, 333, 335, and 336[2]]. The Government has not responded to Petitioner's supplements. The Honorable M. Christina Armijo, Chief United States District Judge, referred this matter to me for proposed findings and a recommended disposition on September 26, 2014. [CV Doc. 4]. Having reviewed the parties' submissions, the relevant law,

---

[1] References that begin with "CV" are to case number 14-cv-0865 MCA/SMV. References that begin with "CR" are to the underlying criminal case, 09-cr-2258 MCA.

[2] Petitioner's filing entitled Memorandum in Support of Second Addendum Motion to Vacate and Set Aside the Judgment and Sentence Pursuant to 28 U.S.C. § 2255 [CV Doc. 23; CR Doc. 336], filed March 2, 2015, is identical to his original Motion [CV Doc. 2; CR Doc. 317], with the exception of the title, caption, signature, and certificate of service. I will not make findings regarding this March 2, 2015 filing [CV Doc. 23; CR Doc. 336] alone because it is duplicative.

the records in this case and Petitioner's underlying criminal case, and being otherwise fully advised in the premises, I recommend that this Motion [CV Docs. 1, 2; CR Docs. 316, 317], together with the supplements [CV Docs. 19, 20, 22, and 23; CR Docs. 330, 333, 335, and 336], be DENIED and that Case No. 14-cv-0865 MCA/SMV be DISMISSED with prejudice.[3]

## BACKGROUND

Petitioner is a convicted tax evader. *United States v. Melot*, 732 F.3d 1234, 1236 (10th Cir. 2013). Petitioner failed to file income tax returns after 1986 and failed to pay any federal income taxes since 1984, despite having received substantial income from his various businesses and rental properties in the same years. *Id.* at 1236–37, 1239. Overwhelming evidence demonstrated that Petitioner's behavior was willful. *Id.* at 1241. Moreover, between 1996 and 2009, Petitioner falsified applications for farm subsidies to the U.S. Department of Agriculture[4] ("USDA") to obtain money to which he was not entitled. *Id.* at 1239.

On August 11, 2009, Petitioner was charged by indictment for corruptly endeavoring to impede the administration of the Internal Revenue Code, in violation of 26 U.S.C. § 7212(a) (Count 1); willfully attempting to evade or defeat tax, in violation of 26 U.S.C. § 7201 (Count 2); willfully failing to file a tax return, in violation of 26 U.S.C. § 7203 (Counts 3–8); and making a false statements to the USDA, in violation of 15 U.S.C. § 714m(a) (Counts 9–15). Indictment [CR Doc. 2]. Petitioner pleaded not guilty on all charges. *Melot*, 732 F.3d at 1236.

---

[3] Because the issues in the Motion and supplements can be resolved on the record, I find that an evidentiary hearing is unnecessary. *See Anderson v. Attorney Gen. of Kan.*, 425 F.3d 853, 858–59 (10th Cir. 2005) (where a petition can be resolved on the record, an evidentiary hearing is unnecessary).

[4] Petitioner made false statements to the U.S. Commodity Credit Corporation, a Federal corporation within the USDA.

A 4-day jury trial was held before the Chief Judge Armijo in April of 2010. *Id.* The jury found Petitioner guilty on all fifteen counts. Redacted Jury Verdict [CR Doc. 79].

Chief Judge Armijo sentenced Petitioner to a term of 60 months' imprisonment, a significant downward variance from the advisory guidelines range of 210–262 months. *Melot*, 732 F.3d at 1240. Petitioner was also ordered to pay $18,493,098.51 in restitution to the Internal Revenue Service ("IRS"), as well as $226,526 in restitution to the USDA. Judgment [CR Doc. 208] at 6.

Petitioner appealed on various grounds,[5] and the United States cross-appealed, [CR Doc. 217]. The Tenth Circuit Court of Appeals affirmed the convictions but remanded for resentencing because it found that Petitioner had not been entitled to the acceptance-of-responsibility sentence reduction under U.S.S.G. § 3E1.1. *Melot*, 732 F.3d at 1245. The Tenth Circuit found that, at trial, Petitioner "challenge[d] the mens rea element of the crimes charged in the indictment. He steadfastly maintained he did not commit the crimes charged because he did not act willfully." *Id.* at 1244–45. Accordingly, the Tenth Circuit found that Petitioner had not accepted responsibility for his criminal conduct, and thus application of the § E1.1 downward adjustment was clearly erroneous. *Id.* at 1245.

On February 7, 2014, Chief Judge Armijo resentenced Petitioner to a total of 14 years' (168 months') imprisonment. Amended Judgment [CR Doc. 310] at 3. Further, Chief Judge Armijo ordered restitution in the amounts of $18,469,988.51 to the IRS and $226,526.00 to the USDA. *Id.* at 6. Petitioner filed no appeal as to his resentencing.

---

[5] Petitioner initially filed a pro se Notice of Appeal [CR Doc. 85], executed on May 5, 2010, following his conviction and prior to sentencing. The Tenth Circuit abated the appeal pending the District Court's judgment and sentencing. [CR Doc. 88]. The Tenth Circuit lifted the abatement of the appeal on September 15, 2011, following the District Court's entry of judgment against Petitioner. [Doc. 213].

Petitioner timely filed the instant Motion on September 23, 2014. [CV Docs. 1, 2, CR Docs. 316, 317]. Petitioner was represented by counsel at the time of filing his original Motion, but he has proceeded pro se since September 30, 2014.

## ANALYSIS

Petitioner alleges an exhaustive list of constitutional violations concerning all aspects of his criminal proceedings, from indictment to resentencing. I have reviewed his claims thoroughly and find each meritless. I address the claims below in order of analytical convenience.

## I. Statute of Limitation Claims

Petitioner brings two claims concerning the statute of limitations. First, Petitioner claims that the District Court did not have subject matter jurisdiction over the offenses charged in the indictment because they occurred beyond the statute of limitations period.[6] [CV Doc. 19] at 5–7. Petitioner contends that the Government's criminal prosecution was barred by the statute of limitations, and that the Government's argued exceptions—specifically, the "affirmative act theory"—are unavailing. *Id.* at 5. He argues that the District Court lacked subject matter jurisdiction over the offenses and, accordingly, his conviction and sentence are invalid under the Due Process Clause. *Id.* at 5–7.

Petitioner brings a related claim based on the statute of limitations alone (rather than for lack of subject matter jurisdiction). *Id.* at 17–18. He contends that the prosecution of Counts 1

---

[6] At one point in his argument, Petitioner contends: "Is it not now considered heavy handed to prosecute and convict [Petitioner] beyond the Statute of Limitations? Clearly, this meets the threshold of government misconduct, including vindictive prosecution." [CV Doc. 19] at 6. To the extent that this could be construed a separate claim for prosecutorial misconduct, I reject it as conclusory and find it to be without merit. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) ("Conclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based."); *also United States v. Fisher*, 38 F.3d 1144, 1147 (10th Cir. 1994) (rejecting allegations that were "merely conclusory in nature and without supporting factual averments").

and 2 was barred by the applicable statute of limitations, and the resulting judgments and sentence were therefore unconstitutional.[7] *Id.*

"Challenges to a district court's subject matter jurisdiction may be raised at any time, including in a § 2255 motion for collateral review of a federal conviction." *United States v. Burch*, 169 F.3d 666, 668 (10th Cir. 1999). Subject matter jurisdiction may not be conferred on a district court by stipulation, estoppel, or waiver. *Id.* Whether the statute of limitations is a jurisdictional bar to Counts 1, 2, and 3–8 is unclear. *See United States v. Madsen*, No. 2:09-CR-00808, 2013 WL 1284331, at *2 and n.7 (D. Utah Mar. 26, 2013) (discussing whether the limitations period found in 26 U.S.C. § 6531 is a jurisdictional bar to prosecution of tax evasion under 26 U.S.C. § 7201 and declining to reach a conclusion based on existing Tenth Circuit law). However, I need not determine whether the statute of limitations is a jurisdictional bar here because I find that the statute of limitations does not bar the criminal indictment.

The charge of corruptly impeding the due administration of the IRS under 26 U.S.C. § 7212(a) (Count I) was timely. The statute of limitations for such offenses is six years. 26 U.S.C. § 6531(6) (assigning a six-year limitations period to "the offense described in [§] 7212(a) (relating to intimidation of officers and employees of the United States)"). The Court instructed the jury to consider the statute of limitations when considering Count 1. Jury Instruction No. 6 [CR Doc. 82] at 16 ("You must also find that at least one of the acts that makes up the wrongful endeavor occurred on or after August 11, 2003 . . . ."). In finding Petitioner

---

[7] Petitioner's claims here echo his pro se Motion to Vacate [CR Doc. 155] filed on December 20, 2010, during his criminal proceedings. In his Motion to Vacate, Petitioner argued that the statute of limitations barred the Government's prosecution. [CR Doc. 155]. The Government responded, arguing that the motion should be struck or, in the alternative, denied on its merits. [CR Doc. 157]. The Government's arguments as to the timeliness of the prosecution are useful here. *See id.* On December 22, 2010, the Court struck the motion on apparently unrelated grounds without reaching the merits. [CR Doc. 158].

guilty of Count I, the jury found that at least one act that was part of the wrongful conduct alleged in Count 1 occurred on or after August 11, 2003. *See id.* Accordingly, prosecution of Count 1 was timely.

The charge of tax evasion under 26 U.S.C. § 7201 (Count 2) was timely. The statute of limitations is six years. 26 U.S.C. § 6531(2) ("[T]he period of limitation shall be 6 years . . . for the offense of willfully attempting in any manner to evade or defeat any tax or the payment."). Generally, the limitations period begins to run from the latter of the due date of the tax return or the last affirmative act of evasion. *See United States v. Payne*, 978 F.2d 1177, 1179 n.2 (10th Cir. 1992). In cases in which the defendant commits an affirmative act of evasion after the statutory due date, the limitations period begins to run from the date of the last such act of evasion. *United States v. Anderson*, 319 F.3d 1218, 1219 (10th Cir. 2003). Thus, the limitations period may be extended beyond six years from the time filing was required (or unpaid taxes were due). *See id.* Here, the Government claimed that Petitioner committed affirmative acts of evasion well within the six years preceding the criminal indictment. *See* [CR Doc. 2] at 7–8. Additionally, the Court instructed the jury to consider the statute of limitations when considering the charge of tax evasion. Jury Instruction No. 11 [CR Doc. 82] at 23 ("As with Count 1, you must also find that at least one of the acts that makes up the wrongful endeavor occurred on or after August 11, 2003 . . . ."). In finding Petitioner guilty, the jury found that at least one act of evasion occurred on or after August 11, 2003. *See id.* Accordingly, prosecution of Count 2 was timely.

The charges of failure to file personal income tax returns under 26 U.S.C. § 7203 (Counts 3–8) were timely. The statue of limitations is six years. 26 U.S.C. § 6531(4) (assigning

a six-year period of limitations "for the offense of willfully failing to pay any tax, or make any return . . . at the time or times required by law or regulations"). The statute of limitations begins to run on the date the tax return is due. *Id*; *see United States v. Phillips*, 843 F.2d 438, 443 (11th Cir. 1988). The indictment charged Petitioner with failing to file his 2003 through 2008 tax returns (corresponding with Counts 3 through 8, respectively). [CR Doc. 2] at 9–10. Petitioner's 2003 tax return was due April 15, 2004, so the statute of limitations expired on April 15, 2010. *See* [CR Doc. 157] at 4. Petitioner was indicted on August 11, 2009. [CR Doc. 2]. The prosecution of Counts 3–8 for Petitioner's failure to file his 2003 through 2008 tax returns was therefore timely.

The charges of making false statements to the U.S. Commodity Credit Corporation under 15 U.S.C. § 714m(a) (Counts 9–15) are timely. The limitations period is five years. 18 U.S.C. § 3282 ("Except as otherwise expressly provided by law, no person shall be prosecuted, tried, or punished for any offense, not capital, unless the indictment is found or the information is instituted within five years next after such offense shall have been committed."); *see United States v. Hansel*, 70 F.3d 6, 7 (2d Cir. 1995) (finding the five-year limitations period to apply). Counts 9–15 charge Petitioner with making false statements to the U.S. Commodity Credit Corporation between May 20, 2005, and July 9, 2008. [CR Doc. 2] at 10. Each farm contract containing a false statement to the U.S. Commodity Credit Corporation was signed on or after August 11, 2004. Accordingly, prosecution of Counts 9–15 was timely.

I find that neither claim based on the statute of limitations is meritorious because the prosecution was not time-barred.

## II.    <u>Multiplicity</u>

Petitioner claims that his indictment was improper due to "multiplicity." [CV Doc. 19] at 8.  He contends that Counts 9–15 are "multiplicitous because they charge multiple violations of the same statute for relatively contemporaneous conduct." *Id.* (citing *United States v. Patterson*, 760 F. Supp. 2d 1116, 1120 (D.N.M. 2009)) (internal quotation marks omitted).  He argues that "all relevant evidence used by the [G]overnment [at trial] to support [C]ounts 9–15 was the same material evidence used to substantiate the same criminal behavior." *Id.*  Petitioner contends that this multiplicity violated his rights under the Double Jeopardy Clause. *Id.*

"Multiplicity refers to multiple counts of an indictment which cover the same criminal behavior." *United States v. McCullough*, 457 F.3d 1150, 1162 (10th Cir. 2006).  While "multiplicity is not fatal to an indictment, multiplicitous counts which may result in multiplicitous convictions are considered improper because they allow multiple punishments for a single criminal offense." *Id.* (internal citations and quotation marks omitted).  Tenth Circuit "jurisprudence establishes that multiplicitous sentences violate the Double Jeopardy Clause." *Id.* An indictment may be multiplicitous when it charges "multiple violations of the same statute from relatively contemporaneous conduct." *Patterson*, 760 F. Supp. 2d at 1120.  "[T]he central question is often whether the underlying conduct is part of the same transaction or comprises *distinct episodes* that can be punished separately." *Id.*  (emphasis added).

Petitioner's claim is meritless.  Counts 9–15 of the indictment—as well as the subsequent conviction and sentence—are not multiplicitous.  Each Count at issue concerns a false statement made by Petitioner to the U.S. Commodity Credit Corporation for the purpose of obtaining money for himself or another. [CR Doc. 2] at 10.  Each false statement is contained in a

different document that pertains to a different farm, different contract year, or both.  *Id.*  The

conduct underlying each Count is not part of the "same transaction."  *See Patterson*, 760 F.

Supp. 2d at 1120.  Rather, it comprises distinct episodes that can be punished separately.  *See id.*

The indictment, therefore, does not suffer from multiplicity.  For the same reasons, the resulting

conviction and sentence also are not multiplicitous.  Petitioner's claim as to the multiplicity of

Counts 9–15 is therefore meritless.

## III.     Juror Bias/Misconduct

Petitioner claims that "juror misconduct tainted the jury members to such a degree that

the constitutional standards of impartiality were not met."  [CV Doc. 19] at 8.  Petitioner alleges

that, as he was exiting the courthouse one evening during the trial and prior to jury deliberations,

a juror approached him speaking in broken English.  *Id.*  Petitioner alleges that he was unable to

help the juror directly "due to the language barrier."  *Id.* at 9.  He asserts three arguments as to

why his right to an impartial jury was violated as a result of this encounter[8]:

> The Juror could not communicate well enough in English to be
> able to understand the details of a trial with the complexities of the
> case at bar.
>
> The Juror was in violation of the Court's instruction not to have
> contact with [Petitioner.]
>
> The encounter between the Juror and [Petitioner] could have
> caused bias against [Petitioner because] it appeared that
> [Petitioner] was unwilling to assist the Juror because [Petitioner]
> could not communicate effectively with the Juror.  Thus, such bias
> may have carried through into the courtroom, tainting other jury
> members.

*Id.* at 9.

---

[8] Petitioner advanced the same arguments in his pro se Motion for Mistrial [CR Doc. 98], filed June 16, 2010.  The
Court struck the motion on September 2, 2010, on apparently unrelated grounds.  [CR Doc. 119].

Petitioner's argument as to the juror's potential inability to understand the trial is meritless. Petitioner contends that the language barrier was of a "sufficient magnitude to draw into question whether it would interfere with the juror's ability to understand the complex and technical testimony and evidence presented during trial." [CV Doc. 19] at 9. Petitioner cites to one out-of-court encounter between himself and the juror to show that the juror did not understand English and therefore did not understand the trial. Petitioner's assessment of the juror's English proficiency is wholly inconsequential. His assertion is purely speculative and conclusory; I therefore reject it as conclusory and find that it is without merit. *See Hall*, 935 F.2d at 1110 (10th Cir. 1991) ("Conclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based.").

Petitioners other arguments—that the juror violated the Court's instruction to avoid contact with Petitioner and the juror's potential bias—are similarly unavailing. "The right to trial by an impartial jury is a fundamental concept of due process." *Burton v. Johnson*, 948 F.2d 1150, 1155 (10th Cir. 1991). However, the showing required to establish juror bias is a high bar. To show juror bias, a petitioner "must show that the juror had such a fixed opinion that he or she could not judge impartially." *Hale v. Gibson*, 227 F.3d 1298, 1319 (10th Cir. 2000) (citing *Irvin v. Dowd*, 366 U.S. 717, 722–23 (1961)). A showing of a juror's "preconceived notion as to the guilt or innocence of the accused" does not rise to the level of partiality. *Id.*; *see Blasi v. Riveland*, 592 F. Supp. 1299, 1302 (D. Colo. 1984) ("Even a strong aversion to a particular crime will not automatically disqualify a prospective juror when the juror states that she can set aside her feelings and decide the case based upon the evidence and the law . . . ."). Courts are to guard against conduct by third parties that might affect a jury's impartiality. *Smith v. Phillips*, 455 U.S.

209, 227 (1982). Any communication by a third party "with a juror during trial about the matter pending before the jury is, for obvious reasons, deemed presumptively prejudicial." *Id.*

Petitioner suggests that the encounter caused the juror to become biased against him and that "such bias was carried over to other [jurors]." [CV Doc. 19] at 9. Petitioner's encounter with the juror did not concern any matter pending before the jury. *Cf. Smith*, 455 U.S. at 227. Petitioner has not alleged that the juror indicated any sort of bias against him during the encounter. And Petitioner has made no showing that, as a result of the encounter, the juror had *such a fixed opinion* that he could not judge impartially. *See Hale*, 227 F.3d at 1319. I find, therefore, that Petitioner has not established a violation of his right to an impartial jury. His claim as to "juror misconduct" is meritless.

## IV. Jury Instruction Concerning Total Assessment of Tax Liability Owed by Petitioner

Petitioner contends that the Court "erred by instructing the Jury that the total Assessment[s] of Tax Liability owed by [Petitioner] were valid as a matter of Law." [CV Doc. 19] at 10. Such a ruling, Petitioner argues, "wrongfully shifted he burden of proof to [Petitioner]" and violated his right to Due Process. *Id.*

Petitioner's argument rings hollow. First, Petitioner cites to no specific portion of the jury instructions to support his claim. Nowhere in the Court's Jury Instructions [CR Doc. 82] did the Court instruct the jury that "the total assessment of tax liability . . . [was] valid as a matter of law" or, as Petitioner also phrases, "that assessments in prosecution for evasion of income tax were valid as a matter of law." *See* [CV Doc. 19] at 10. Moreover, even if Petitioner were correct as to how the Court instructed the jury, he fails to show that such an instruction violates

his constitutional rights or otherwise entitles him to relief. I find that Petitioner's claim concerning the Court's instruction is meritless.

## V.   Sufficiency of the Indictment

Petitioner claims that his indictment was constitutionally insufficient. [CV Doc. 19] at 12–17. Petitioner argues that the indictment contained "a series of unrelated transactions," was broad, and failed to state the material elements of the offenses. *Id.* at 12. He argues against the sufficiency of each Count in the indictment. Petitioner's claim is meritless.

### A.   Standard

"An indictment is sufficient if it sets forth the elements of the offense charged, puts the defendant on fair notice of the charges against which he must defend, and enables the defendant to assert a double jeopardy defense." *Tillman v. Cook*, 215 F.3d 1116, 1132 (10th Cir. 2000) (quoting *United States v. Dashney*, 117 F.3d 1197, 1205 (10th Cir. 1997)); *see Johnson v. Gibson*, 169 F.3d 1239, 1252 (10th Cir. 1999) ("A charging instrument may violate the Sixth Amendment by failing to provide a defendant with adequate notice of the nature and cause of the accusations filed against him."), *cert. denied*, 528 U.S. 972 (1999). An indictment is generally sufficient where it "set[s] forth an offense in the words of the statute itself, as long as those words themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offence intended to be punished." *Tillman*, 215 F.3d at 1132 (quoting *Hamling v. United States*, 418 U.S. 87, 117 (1974)).

### B.   Sufficiency of Count 1

Count 1 charges Petitioner with tax evasion under 26 U.S.C. § 7212(a). Petitioner contends that the indictment fails to properly "outline how [his] transactions were done with the

intent to intimidate or impede the IRS, or how such was done corruptly." [CV Doc. 19] at 13.

Accordingly, he argues, he was deprived of the necessary facts and elements of the alleged

offense, was not properly informed of the charge, and was unable to prepare a defense in the

case. *Id.* Moreover, Petitioner contends that the indictment supports a lesser sentence of one

year rather than three years. *Id.*

The indictment is constitutionally sufficient as to Count 1. The statute under which

Petitioner was charged states:

> Whoever corruptly or by force or threats of force (including any
> threatening letter or communication) endeavors to intimidate or
> impede any officer or employee of the United States acting in an
> official capacity under this title, or in any other way corruptly or
> by force or threats of force . . . obstructs or impedes, or endeavors
> to obstruct or impede, the due administration of this title, shall,
> upon conviction thereof, be fined not more than $5,000, or
> imprisoned not more than 3 years, or both, except that if the
> offense is committed only by threats of force, the person convicted
> thereof shall be fined not more than $3,000, or imprisoned not
> more than 1 year, or both.

26 U.S.C. § 7212(a). Count 1 of the indictment contends that Petitioner "did corruptly endeavor

to impede the due administration of the Internal Revenue Code" and then describes various acts.

[CR Doc. 2] at 3. The indictment then lists pages of "acts committed in furtherance of the

endeavor to corruptly interfere with the due administration of the Internal Revenue Code." *Id.*

at 4. The indictment tracks the language of the statute Petitioner was charged with violating.

*See Tillman*, 215 F.3d at 1132 (finding meritless a habeas petitioner's claim that his indictment

for murder was constitutionally inadequate where the indictment tracked the exact language of

the statute he was charged with violating). I see no ambiguity or uncertainty in the indictment

that could have prejudiced Petitioner in preparing his defense. *See id.* Moreover, the indictment

supports a sentence greater than one year.  I find, therefore, that Petitioner's claim as to Count 1 is meritless.

### C.    Sufficiency of Count 2

Count 2 charges Petitioner with tax evasion under 26 U.S.C. § 7201.  Petitioner contends that "[t]he indictment fails to properly outline how [his] transactions were done with the intent to [e]vade or [d]efeat any tax payment."  [CV Doc. 19] at 14.  Petitioner claims that Count 2 is so broad, "it is impossible for [him] to [have been] informed of the charges so that he [could] prepare a defense."  *Id.*  He argues that the indictment "has no [f]oundation to stand on, as the [G]overnment had no evidence to support tax years from 1994 to 2010."  *Id.*  Quoting the Government's Sentencing Memorandum [CR Doc. 130], Petitioner notes "[t]he IRS did not have records to compute [Petitioner]'s federal tax liability from 1994 to 2010."  *Id.*

The indictment is constitutionally sufficient as to Count 2.  The statute under which Petitioner was charged states:

> Any person who willfully attempts in any manner to evade or defeat any tax imposed by this title or the payment thereof shall, in addition to other penalties provided by law, be guilty of a felony and, upon conviction thereof, shall be fined not more than $100,000 ($500,000 in the case of a corporation), or imprisoned not more than 5 years, or both, together with the costs of prosecution.

26 U.S.C. § 7201.  As with Count 1, Count 2 of the indictment tracks the language of the statute Petitioner was charged with violating.  [CR Doc. 2] at 8–9; *see also Tillman*, 215 F.3d at 1132.  I see no ambiguity or uncertainty in the indictment that could have prejudiced Petitioner in preparing his defense.  *See Tillman*, 215 F.3d at 1132.  Moreover, Petitioner quotes the Government's Sentencing Memorandum out of context.  The Government noted the IRS's lack

of records in order to show that the $18 million figure—the requested restitution—reflected only a small portion of Petitioner's true overall tax liability. [CR Doc. 130] at 3. It does not indicate any lack of foundation as to Count 2 of the indictment. I find, therefore, that Petitioner's claim as to Count 2 is meritless.

### D.      Sufficiency of Counts 3–8

Counts 3–8 charge Petitioner with failure to file income tax returns under 26 U.S.C. § 7203. Petitioner points to the Government's chart contained in the indictment which reflects the date each income tax return was due. [CV Doc. 19] at 15. Petitioner believes the chart is insufficient, as it "does not show any amount of earnings or tax due for the years outlined." *Id.* Petitioner contends that "the Government had no proof that an offense was ever committed" and therefore had no evidence to show to a grand jury. *Id.*

The indictment is constitutionally sufficient as to Counts 3–8. The statute that Petitioner was charged with violating reads as follows:

> Any person required under this title to pay any estimated tax or tax, or required by this title or by regulations made under authority thereof to make a return, keep any records, or supply any information, who willfully fails to pay such estimated tax or tax, make such return, keep such records, or supply such information, at the time or times required by law or regulations, shall, in addition to other penalties provided by law, be guilty of a misdemeanor and, upon conviction thereof, shall be fined . . . or imprisoned . . . or both, together with the costs of prosecution.

26 U.S.C. § 7203. Counts 3–8 of the indictment adequately set forth the elements of the offense charged and put Petitioner on fair notice of the charges against him. *See Tillman*, 215 F.3d at 1132. The indictment need not outline the Government's entire case. Indeed, it is sufficient

for an indictment simply to set forth the offense in the words of the statute itself, *see id.*, as the indictment does here.  I find, therefore, that Petitioner's claim as to Counts 3–8 is meritless.[9]

### E.        Sufficiency of Counts 9–15

Counts 9–15 charge Petitioner with making false statements to the U.S. Commodity Credit Corporation under 15 U.S.C. § 714m(a).  Petitioner contends that the indictment is insufficient because the allegations do not meet the "materiality element of the offense."  [CV Doc. 19] at 15 (citing *Bartlett & Co., Grain v. United States*, 353 F.2d 338 (10th Cir. 1965)).  He argues that the elements alleged "do not meet the offense charged"—contending that 18 U.S.C. § 1001 (Fraud) or 15 U.S.C. § 714m(b) (concerning false entries) might have been more appropriate—and therefore the indictment is invalid and void.  *Id.* at 16.  Petitioner cites to *Bartlett & Co., Grain*, which held that "[m]ateriality of [the false] statement is, to be sure, an essential element of the offense charged."  353 F.2d at 340.  Petitioner seems to believe that the indictment must contain enough evidence to prove up the case.  Petitioner is mistaken.

The indictment is constitutionally sufficient as to Counts 9–15.  The statute under which Petitioner was charged provides for the criminal prosecution of anyone who

> makes any statement knowing it to be false . . . for the purpose of influencing in any way the action of the [U.S. Commodity Credit] Corporation, or for the purpose of obtaining for himself or another, money, property, or anything of value, under this subchapter, or under any other Act applicable to the Corporation . . . .

15 U.S.C. § 714m(a).  Counts 9–15 of the indictment track the language of this statute.  [CR Doc. 2] at 10.  The indictment specifically identifies the false statement at issue by date,

---

[9] To the extent that Petitioner's claim as to Counts 3–8 could be construed to challenge the sufficiency of evidence during the grand jury proceeding, I reject it as conclusory and find that it is without merit.  *See Hall*, 935 F.2d at 1110 (10th Cir. 1991) ("Conclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based.").

corresponding farm number, and funds received. *Id.*; *see Bartlett & Co., Grain*, 353 F.2d at 340 (finding an indictment sufficient where it charged defendant grain company with knowingly having made a false statement for the purpose of influencing the U.S. Commodity Credit Corporation to pay it an "in store" receiving allowance for purchased rye). I see no ambiguity or uncertainty in the indictment that could have prejudiced Petitioner in preparing his defense. *See Tillman*, 215 F.3d at 1132. I find, therefore, that Petitioner's claim as to Counts 9–15 is meritless.

## VI. <u>Restitution</u>[10]

In his February 20, 2015 supplemental filing, Petitioner claims that the sentence imposing restitution is illegal and should be vacated. [CV Doc. 20]. He argues that "the District Court was without authority to impose restitution, yet further erred by directing that [the] criminal monetary (restitution) penalty shall be due during the period if imprisonment." *Id.* at 2.

A habeas proceeding is "an attack by a person in custody upon the legality of that custody." *McIntosh v. U.S. Parole Comm'n*, 115 F.3d 809, 811 (10th Cir. 1997) (quoting *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973)). A challenge to the restitution portion of a prisoner's sentence does not challenge custody. *Satterfield v. Scibana*, 275 F. App'x 808, 810 (10th Cir. 2008) (finding a challenge to the court's restitution order not cognizable in a petition brought under § 2241); *Erlandson v. Northglenn Mun. Court*, 528 F.3d 785, 788 (10th Cir. 2008) ("[T]he payment of restitution or a fine, absent more, is not the sort of 'significant restraint on liberty' contemplated in the 'custody' requirement of the federal habeas statutes.") (quoting *Obado v. New Jersey*, 328 F.3d 716, 718 (3d Cir. 2003)) (internal quotation marks omitted); *see*

---

[10] Petitioner also brings various ineffective-assistance-of-counsel claims concerning the Court's restitution order. Those claims are addressed *infra*, Section VII.I.

*Kirby v. Janecka*, No. 09–2097, 2010 WL 2075414, *1 (10th Cir. May 25, 2010) (finding that the habeas petitioner's claim "fail[ed] to satisfy the substance requirement" of the federal habeas statute because the "claim challenges only the validity of the state court's restitution order, not his custody"). Accordingly, a challenge to a restitution order is not cognizable in a § 2255 petition. *Mamone v. United States*, 559 F.3d 1209, 1211 (11th Cir. 2009) ("[The petitioner] cannot utilize § 2255 to challenge his restitution."); *Kaminski v. United States*, 339 F.3d 84, 88 (2d Cir. 2003) ("A convicted defendant who receives an allegedly erroneous fine . . . cannot seek post-conviction relief under § 2255[.]") (quoting *United States v. Segler*, 37 F.3d 1131, 1137 (5th Cir. 1994)); *United States v. Bernard*, 351 F.3d 360, 361 (8th Cir. 2003) ("We join a majority of circuits in holding that a federal prisoner cannot challenge the restitution portion of his sentence using 28 U.S.C. § 2255[.]"); *United States v. Thiele*, 314 F.3d 399, 402 (9th Cir. 2002) (holding that the habeas petitioner could not collaterally attack his restitution order in a § 2255 motion because while "[c]laims seeking release from custody can be brought under § 2255[,] claims seeking other relief cannot"); *Smullen v. United States*, 94 F.3d 20, 26 (1st Cir. 1996) ("[W]e hold that [the petitioner] cannot challenge his restitution obligation in this § 2255 proceeding."); *see Erlandson*, 528 F.3d 785, 788 (challenge to restitution is not cognizable in a petition under § 2254); *Satterfield*, 275 F. App'x at 810 (challenge to restitution is not cognizable in a petition under § 2241); *but see Weinberger v. United States*, 268 F.3d 346, 351 n.1 (6th Cir. 2001) (finding an ineffective assistance of counsel claim regarding restitution to be cognizable under § 2255).

Petitioner seeks to challenge the Court's restitution order. I find that Petitioner's claim is not cognizable in this habeas proceeding and should be denied.

## VII.  Ineffective-Assistance-of-Counsel Claims

Petitioner asserts numerous claims for ineffective assistance of his trial counsel and appellate counsel.[11]  Petitioner's claims are meritless.

### A.  Standard of Review

The test for making a claim of constitutionally ineffective assistance of counsel was set forth by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, a defendant must satisfy a two-part test:

> First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair [proceeding].

466 U.S. at 687.  Both showings must be made to satisfy the *Strickland* standard.  *Id.*  The Court need not address both prongs of the standard if the defendant makes an insufficient showing on one of the prongs.  *Id.* at 697.  In applying the two-part *Strickland* test, a court may address the performance and prejudice components in any order.  *Boltz v. Mullin*, 415 F.3d 1215, 1222 (10th Cir. 2005).

Under the first prong, a defendant must demonstrate that his counsel's performance was deficient.  The appropriate standard for attorney performance is that of reasonably effective assistance; the defendant must demonstrate that counsel's representation, considering all the circumstances, fell below an objective standard of reasonableness based on prevailing

---

[11] "Trial counsel" generally refers to attorney William Brittain, whereas "appellate counsel" generally refers to attorney Gregory Acton.  Mr. Britain withdrew as counsel on October 19, 2010, after Petitioner's trial ended.  *See* [CR Doc. 143].  Mr. Acton was appointed as Petitioner's attorney on September 2, 2010, prior to sentencing.  *See* [CR Doc. 127].

professional norms.  *See Strickland* 466 U.S. at 687–88.  For counsel's performance to be constitutionally ineffective, it must have been "completely unreasonable, not merely wrong." *Hoxsie v. Kerby*, 108 F.3d 1239, 1246 (10th Cir. 1997) (quoting *Hatch v. Oklahoma*, 58 F.3d 1447, 1459 (10th Cir. 1995)).  In evaluating an attorney's performance, the Court must be highly deferential:

> A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.

*Strickland*, 466 U.S. at 689 (internal quotation marks omitted).

In applying this test, the Court must give considerable deference to an attorney's strategic decisions and "recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id*. at 690.  "Neither hindsight nor success is the measure" of whether counsel was effective, and "effective" is not synonymous with victorious or flawless.  *Dever v. Kan. State Penitentiary*, 36 F. 3d 1531, 1537 (10th Cir. 1994).  Rather, to be considered *ineffective* assistance of counsel, "the representation must have been such as to make the [proceeding] a mockery, sham, or farce, or resulted in the deprivation of constitutional rights." *Id*. (citing *Lorraine v. United States*, 444 F.2d 1, 2 (10th Cir. 1971)).

A defendant asserting ineffective assistance of counsel must also affirmatively prove prejudice.  *Strickland*, 466 U.S. at 693.  "The defendant must show that there is a reasonable

probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

"Ineffective assistance of appellate counsel claims are governed by the standards of *Strickland.*" *Hooks v. Ward*, 184 F.3d 1206, 1221 (10th Cir. 1999). That is, a petitioner must show both deficient performance and prejudice resulting from counsel's deficiencies to prevail.

**B.** **Claims for Ineffective Assistance of Trial Counsel Regarding the *Cheek* Defense**

Petitioner claims that trial counsel was constitutionally ineffective for failing to argue and present evidence that he was not *willful* in evading his tax liabilities under *United States v. Cheek*, 498 U.S. 192, 202 (1991). *See generally* [CV Doc. 2]. Petitioner alleges four grounds in support. First, he claims that trial counsel was ineffective in failing present the *Cheek* defense. *Id.* at 8–11; *see* [CV Doc. 1] at 3–4; [CV Doc. 15] at 3–4; *also* [CV Doc. 22] at 3. Second, he claims that trial counsel was ineffective for stipulating to the exclusion of evidence critical to asserting the *Cheek* defense. [CV Doc. 2] at 11–14; *see* [CV Doc. 1] at 4; [CV Doc. 15] at 4–5. Third, he claims that trial counsel was ineffective in focusing the jury on the issue of tax loss, rather than on guilt or innocence. [CV Doc. 2] at 18–21; *see* [CV Doc. 1] at 5; [Doc. 15] at 6; *also* [Doc. 22] at 5. Finally, Petitioner claims that trial counsel was ineffective for failing to retain a psychological expert witness to testify regarding his "propensity to believe questionable authorities." [CV Doc. 2] at 21–23; *see* [CV Doc. 1] at 4; [CV Doc. 15] at 6–7; *also* [Doc. 22] at 4.

The Government contends that these claims are meritless, [CV Doc. 14] at 6–13, and I agree.

### 1. Claim Concerning Trial Counsel's Failure to Present the Cheek Defense

Petitioner claims that trial counsel failed to "present a coherent case for a *Cheek* defense." [CV Doc. 2] at 8. Petitioner claims that he "honestly believed he was not required by law to file income tax returns or to pay income taxes (however unreasonably)" and "is in fact innocent of willfully attempting to evade or defeat the payment of federal income tax (Count 2) and of willfully failing to make an income tax return for tax returns (Counts 3 through 8)."[12] [CV Doc. 2] at 8. Petitioner contends that trial counsel was deficient for burying the defense, spending little time on the defense during opening statement, and arguing against the defense at closing. *Id.* at 8–10. He argues that counsel's failure to argue the *Cheek* defense indicates his ignorance of it—and is unreasonable performance under *Strickland*. *Id.* at 10–11. And he claims that the deficiency prejudiced him:

> Had the *Cheek* defense been presented to the jury in a coherent way, a significant possibility, if not probability, exists that the jury would have found that [Petitioner] really believed the literature and that he, in fact, had a good faith belief, however reasonable or unreasonable, that he was not violating the tax laws.

*Id.* at 10.

Petitioner's claim is meritless. First, Petitioner's assertion that trial counsel spent little time on the *Cheek* defense is belied by the record. As the Government outlines in its response, trial counsel elicited numerous statements from Petitioner during direct examination in support of Petitioner's good-faith misunderstanding of the law. [CV Doc. 14] at 7–8; *see* Transcript of Jury Trial Day 3, April 21, 2010 [CR Doc. 241] at 169–231. Petitioner stated at multiple points

---

[12] To the extent that this could be construed as a separate claim for actual innocence, I reject it as conclusory and find it to be without merit. *See Hall*, 935 F.2d at 1110 (10th Cir. 1991) ("Conclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based."); *also Fisher*, 38 F.3d at 1147 (rejecting allegations that were "merely conclusory in nature and without supporting factual averments").

during direct examination that he did not willfully evade taxes, did not realize he personally owed taxes, and did not realize he had any personal tax liability. [CV Doc. 14] at 7–8 (outlining various statements made in support of the *Cheek* defense). Trial counsel elicited testimony regarding Petitioner's reliance on tax protestor literature. *Id.* at 8. Trial counsel also advanced the *Cheek* defense during closing argument. Transcript of Jury Trial Day 4, April 22, 2010 [CR Doc. 243] at 91 (arguing that Petitioner's willfulness was absent). Moreover, trial counsel requested—and the Court issued—a jury instruction concerning Petitioner's good-faith argument. Jury Instruction No. 10 [CR Doc. 82] at 20.

The Tenth Circuit noted on appeal that Petitioner, through his counsel, "steadfastly maintained he did not commit the crimes charged because he did not act willfully." *Melot*, 732 F.3d at 1244–45 (noting that Petitioner's direct examination began with an exchange concerning the good-faith defense). Far from being buried, the *Cheek* defense was at the forefront of Petitioner's defense throughout his criminal proceedings. *See id.* Indeed, it was Petitioner's unflinching commitment to the defense that caused the Tenth Circuit to find that the "record contain[ed] absolutely no evidence supporting the application of the acceptance-of-responsibility reduction." *See id.* at 1245 (reversing Petitioner's original sentence). Therefore, Petitioner's claim that trial counsel spent little time and effort developing the *Cheek* defense, as well as his allegation that counsel was ignorant of the defense, is simply false.

Second, assuming *arguendo* that Petitioner's assertions were accurate and his attorney had not raised his lack of willfulness, Petitioner still has not established trial counsel's deficient performance. An attorney's choice in advancing one theory over another at trial is often a strategic decision. *See United States v. Prows*, 280 F. App'x 740, 742 (10th Cir. 2008)

("[A]ttorneys have wide latitude in making tactical decisions.") (citing *Strickland*, 466 U.S. at 689). An attorney is not constitutionally required to make specific arguments—or even the best argument—during a criminal proceeding. *See id.* (explaining that an attorney's decision "not to make the exact arguments that [the habeas petitioner] desired, standing alone, [does] not demonstrate that the attorney's decisions were so completely unreasonable as to constitute ineffective assistance"). Trial counsel's decision to advance certain arguments over others was a strategic decision. He was not constitutionally required to advance the particular argument Petitioner discusses here.

Finally, even if Petitioner were to establish deficient performance, he has not established prejudice as a result of trial counsel's alleged deficiencies. On appeal, the Tenth Circuit found that "[t]he Government's evidence demonstrated *overwhelmingly* that [Petitioner] engaged in behavior consistent with an individual who had actual knowledge of his obligation to file returns and pay tax." *Melot*, 732 F.3d at 1244–45 (emphasis added). There is not a reasonable probability that, but for trial counsel's alleged deficiency, the result of the proceeding would have been different.

Petitioner's claim as to trial counsel's failure to present the *Cheek* defense is meritless. Petitioner's allegation that trial counsel failed to develop the defense is belied by the record. And even if Petitioner's allegations were supported by the record, Petitioner still has failed to establish both deficient performance and prejudice as required under *Strickland*.

>    2.    *Claim of Ineffective Assistance for Trial Counsel's Stipulation Concerning Critical Evidence*

Prior to trial, the Government filed a Motion in Limine to Exclude "Tax Protestor" Literature and other Hearsay [CR Doc. 39]. The motion sought to preclude Petitioner "from

offering evidence that was not actually relied upon by him or that would otherwise confuse the jury regarding the law." *Id.* at 2. Relatedly, the motion sought to require Petitioner to "proffer facts to support the admission of any tax literature," contending that "[Petitioner] must first lay a proper foundation which demonstrates that he actually relied upon the specific material that is being offered" prior to its admissibility. *Id.* at 3. Trial counsel stipulated to exclusion of tax protestor literature. In a one-page response to the Government's motion, trial counsel stated that he "communicated to [the] Government [his] intention with respect to Tax Protestor literature." [CR Doc. 69] at 1; *see* Transcript of Call of the Calendar, April 15, 2010 [CR Doc. 244] at 73–77 (discussing trial counsel's "intended use" of keeping the tax protestor literature at counsel's table merely to show its existence). And trial counsel agreed that Petitioner would not offer the tax protestor literature into evidence. [CR Doc. 69] at 1.

Petitioner claims that trial counsel was constitutionally deficient in agreeing to the Government's requested exclusion of evidence. [CV Doc. 2] at 12–14. "No conceivable potential trial advantage could inure to [Petitioner]'s benefit from the exclusion of this evidence," he argues. *Id.* at 14. Petitioner contends that the alleged deficiency "took much of the weight and credibility out of [his] defense." *Id.* at 13.

Petitioner's claim is meritless. First, Petitioner has not established trial counsel's deficient performance. The Government sought to exclude the admission of tax protestor literature unless trial counsel was able to lay the proper foundation demonstrating his actual reliance on the literature. [CR Doc. 39] at 2. Courts are careful in analyzing whether admission of such evidence is proper—especially where confusion of the issues and speculation on the part of the jury may result. *United States v. Willie*, 941 F.2d 1384, 1393 (10th Cir. 1991) ("[T]he

precise purpose for which the evidence is offered becomes crucial to the trial court's determination of admissibility, particularly in cases [involving one's belief that he was not required to file tax returns] where the careless admission of evidence supporting both relevant and irrelevant types of belief could easily obfuscate the relevant issue and tempt the jury to speculate that the mere existence of documentary support for the defendant's position negates his independent knowledge that he has a legal duty."). I find that trial counsel's stipulation to the exclusion of tax protestor literature was not completely unreasonable in light of courts' concerns as to the use and misuse of such evidence.

Assuming *arguendo* that trial counsel's performance were completely deficient—which I do not find—Petitioner has not established prejudice as a result of the alleged deficiency. Trial counsel elicited testimony during Petitioner's direct examination concerning his reliance on certain books. *See, e.g.*, Transcript of Jury Trial Day 3, April 21, 2010 [CR Doc. 241] at 193–94 (stating that Petitioner relied on a few books). And trial counsel noted during Petitioner's direct examination that he was holding "a couple [of] books" that Petitioner allegedly relied on. *Id.* Even though trial counsel was unable to offer tax protestor literature into evidence, he still elicited testimony regarding Petitioner's reliance on tax protestor books and gestured to them in the jury's presence. Petitioner has failed to establish prejudice resulting from trial counsel's alleged deficiency. As Petitioner has established neither deficiency nor prejudice as required under *Strickland*, I find that his claim is meritless.

### 3. Claim of Ineffective Assistance for Counsel's Focus on Tax Loss

Petitioner claims that trial counsel was ineffective for focusing the jury's attention on the amount of taxes the Government claimed he owed—rather than on Petitioner's guilt or

innocence. [CV Doc. 2] at 17–21. In support of his claim, Petitioner compares the amount of time trial counsel dedicated to discussions of tax loss with the amount of time dedicated to the *Cheek* defense. *Id.* at 17 ("[M]ore than half the opening statement was dedicated to the amount of the tax loss and the rest to other matters not involving [Petitioner]'s good faith beliefs, with the exception of two extraneous comments."), 18 ("[O]ut of the one hour and forty-four minutes on direct examination [of Petitioner], counsel spent only fourteen and one-half minutes on [Petitioner]'s state of mind (i.e., 14%)."), and 19 (stating that of the forty-six minutes of summation, trial counsel dedicated only 4 minutes to discussing willfulness). Essentially, Petitioner contends that trial counsel dedicated too much time to the issue of tax loss and too little time to the *Cheek* defense. Petitioner claims that this was "not a rational trial strategy" and "effectively denied [him] of his legitimate defense." *Id.* at 21.

Petitioner's claim is meritless. First, Petitioner has not established deficient performance. The Government contends that trial counsel's discussion of tax loss was a not unreasonable because it was used to complement Petitioner's assertion of good faith and the *Cheek* defense. [CV Doc. 14] at 11. The Government argues that the "strategy was to juxtapose the massive tax deficiency the IRS told [Petitioner] he owed with the small amount of income that [Petitioner] testified that he earned." *Id.* Indeed, it is plausible that the discussion of tax loss "could have been for the purpose of demonstrating to the jury why [Petitioner] did not believe that he actually owed any taxes," as the Government contends. *Id.*

But even if the issue of tax loss were completely unrelated to the *Cheek* defense, Petitioner has not established that trial counsel's performance was so completely unreasonable as to rise to the level of constitutionally deficient performance. "[A]ttorneys have wide latitude in

making tactical decisions." *Prows*, 280 F. App'x at 742. Trial counsel's choice in spending more time on one theory over another was a strategic decision. *See id.* Trial counsel was not constitutionally required to spend the greatest amount of time developing the *Cheek* defense. I find that Petitioner has not established deficient performance as required under *Strickland*.

Moreover, Petitioner has not shown prejudice as a result of counsel's alleged deficiency. As discussed above, trial counsel spent a great deal of time and effort developing the *Cheek* defense. Yet the Tenth Circuit found on appeal that "[t]he Government's evidence demonstrated *overwhelmingly* that [Petitioner] engaged in behavior consistent with an individual who had actual knowledge of his obligation to file returns and pay tax." *Melot*, 732 F.3d at 1244–45 (emphasis added). There is no reasonable probability that the result of the proceeding would have differed had trial counsel spent more time on the *Cheek* defense and less time on the issue of tax loss. I find, therefore, that Petitioner has not established prejudice, and his claim for ineffective assistance of counsel is meritless.

4. *Claim of Ineffective Assistance for Counsel's Failure to Retain a Psychological Expert*

Petitioner contends that trial counsel was constitutionally ineffective in failing to "call a psychological expert witness to inform the jury that [Petitioner] is just that unusual individual who would believe the tax protestor literature, regardless of his intelligence." [CV Doc. 2] at 21. Specifically, Petitioner contends that trial counsel should have called Dr. Samuel Roll, who testified as to Petitioner's susceptibility to "conspiratorial and quasi-delusional beliefs" at sentencing. *Id.* Petitioner contends such testimony was "critical to the *Cheek* defense and posed no risk." *Id.* at 21–22. Petitioner claims that trial counsel's deficiency prejudiced him because without psychological expert testimony, "the jury would necessarily have followed the reasoning

that, if the claims made by the tax literature are not credible, then this intelligent man did not really believe them." *Id.* at 21.

Petitioner's claim is meritless. First, Petitioner has not established that trial counsel's performance was constitutionally deficient. The decision of whether or not to retain an expert is a matter of trial strategy. *Knapp v. Janecka*, 337 F. App'x 766, 770 (10th Cir. 2009) (referring to an attorney's failure to call an expert witness as a "strategic trial decision[]" that it would not second-guess); *see United States v. Maxwell*, 966 F.2d 545, 548–49 (10th Cir. 1992) (finding meritless a criminal defendant's claim for ineffective assistance based on counsel's failure to call an expert witness at trial because the defendant "fail[ed] to overcome the inherent presumption that his trial attorney's tactics fell squarely within the wide range of 'sound trial strategy'"). For counsel's decisions concerning trial strategy to be constitutionally deficient, they must be "completely unreasonable, not merely wrong, so that they bear no relationship to a possible defense strategy." *Fox v. Ward*, 200 F.3d 1286, 1296 (10th Cir. 2000) (quotation and alteration omitted). Petitioner contends that trial counsel's failure to call a psychological expert deviated from sound trial strategy because the expert was necessary to the *Cheek* defense. But as discussed above, trial counsel did present the *Cheek* defense. Indeed, Petitioner's "good faith defense was front and center in his trial." [CV Doc. 14] at 12. Petitioner fails to show how calling a psychological expert was "completely unreasonable" in light of the already-heavy emphasis on the *Cheek* defense.

Second, even assuming *arguendo* that trial counsel acted deficiently, Petitioner has not established prejudice. Given the weight of evidence against Petitioner, *see Melot*, 732 F.3d at 1244–45, there is no reasonable probability that, had counsel not committed the alleged error,

the outcome of the case would have been different.  *See Boyle v. McKune*, 544 F.3d 1132, 1138

(10th Cir. 2008) (finding no ineffective assistance of counsel in a habeas proceeding where trial

counsel failed to interview and call an expert witness).  I find that Petitioner has failed to show

ineffective assistance of counsel under *Strickland* as to this claim.

### C.   Claim of Ineffective Assistance for Trial Counsel's Arguments "Against" Petitioner at Closing

Petitioner claims that trial counsel was constitutionally ineffective because he argued

"against" Petitioner during his closing argument.  [CV Doc. 2] at 14–17; *see* [Doc. 1] at 3, 4–5;

[Doc. 15] at 3–4; *also* [Doc. 22] at 4–5.  In support of his claim, Petitioner quotes five statements

made during trial counsel's closing argument:

> [W]e're lucky to have people like this working for the U. S. Attorney's Office. [Transcript of Jury Trial Day 4, April 22, 2010 [Doc. 243] at 74–75.]

> I wanna talk about kinda stepping into the bizzare . . . . It's just kind of bizarre, you know, Mr. Melot. . . . Your corporations that you . . . paid good money for these lawyers, and we're just gonna ignore 'em. [*Id.* at 75–76.]

> Well, he paid tax returns in '85 and '86, and you can take that as evidence that he knows he should pay taxes and file returns." [*Id.* at 88.]

> Maybe he only heard what he wanted to hear.  [*Id.* at 92.]

> And it may be justice, I suggest to you, very well could be, that Mr. Bill Melot loses everything he has, everything, for what he has done.  I don't know.  [*Id.* at 98–99.]

[CV Doc. 2] at 14–15.  Petitioner contends that these statements cannot be explained as sound

trial strategy.  *Id.* at 16.  He argues that trial counsel's statements caused prejudice as they left

him with no credibility or defense. *Id.* at 15–16. The Government contends that Petitioner has taken each statement out of context. [CV Doc. 14] at 13–14.

Petitioner's claim as to trial counsel's statements is meritless. Petitioner has not established that trial counsel was constitutionally deficient in making these statements. Counsel have wide latitude in making tactical decisions, including what to argue at summation. *See United States v. Thompson*, No. 05-CR-00141-MSK-1, 2011 WL 3861429, at *4 (D. Colo. Aug. 31, 2011) (finding, in a motion under § 2255, that counsel's decision to argue petitioner's guilt on certain "lesser offenses" at closing argument was a "strategic choice" based on the circumstances at trial and did not amount to ineffective assistance); *also Fox*, 200 F.3d at 1296 (trial counsel's decision to waive an opening or closing statement is a strategic decision); *Green v. Snedeker*, 355 F. App'x 146, 151 (10th Cir. 2009) (denying a certificate of appealability for review of an ineffective assistance of counsel claim concerning counsel's short closing argument, where trial counsel testified that his short closing argument was a "strategic trial decision"). Counsel's tactical decisions concerning trial strategy must be completely unreasonable, not merely wrong, in order to be constitutionally deficient. *Fox*, 200 F.3d at 1296.

I have reviewed each of the five statements. Viewed in light of trial counsel's entire closing argument, the statements appear to be traditional techniques of rhetoric and persuasion— such as building rapport with the jury, summarizing the opposing counsel's argument, and point/counterpoint. More to the point, Petitioner has not shown that trial counsel's statements were so completely unreasonable as to bear no relationship to any possible defense strategy. I find that Petitioner has not established trial counsel's deficient performance. His claim for ineffective assistance of counsel is therefore meritless.

### D. Claim of Ineffective Assistance for Trial Counsel's Failure to File a Motion for Judgment of Acquittal

At the close of the Government's case-in-chief, trial counsel informed the Court that he was reserving a motion for judgment of acquittal until after the verdict. [CV Doc. 2] at 23. But trial counsel never made such a motion. *Id.* On direct appeal, Petitioner challenged the sufficiency of the evidence presented by the Government to prove he willfully attempted to evade or defeat tax and willfully failed to file tax returns. *Melot*, 732 F.3d 1234 at 1240. Trial counsel's failure to move for judgment of acquittal meant that the Tenth Circuit reviewed this issue under the plain error standard rather than de novo. *Id.*

Petitioner now claims that trial counsel was constitutionally ineffective in failing to file a motion for judgment of acquittal. [CV Doc. 2] at 23. He contends that there is "[n]o potential benefit" in failing to file such a motion. *Id.* at 24. Petitioner claims that the alleged deficiency prejudiced him in various ways. First, "had the motion for judgment of acquittal been properly made, the trial attorney would have addressed the failure of the Government to negate [Petitioner]'s asserted beliefs[, and] judgment of acquittal would have been appropriate." *Id.* (emphasis removed). Second, Petitioner "would have had the benefit of de novo review on appeal."

Petitioner's claim is meritless. First, Petitioner has not shown a reasonable probability that, but for trial counsel's alleged error, the motion for judgment of acquittal would have been granted. The Tenth Circuit stated on appeal that "[t]he Government's evidence demonstrated overwhelmingly that [Petitioner] engaged in behavior consistent with an individual who had actual knowledge of his obligation to file returns and pay tax." *Melot*, 732 F.3d 1234 at 1240. The court went on:

> [T]he Government's evidence showed [that Petitioner] routinely concealed income and assets from the IRS; used cash extensively, informing others that this was a means to avoid the payment of income taxes; and acted in a manner inconsistent with his asserted belief he is not subject to federal income taxes because he is not a citizen of the United States. All of the Government's evidence, together with the reasonable inferences that can be drawn from it, is amply sufficient to support the jury's finding that [Petitioner] was aware of his obligation to file returns and pay federal taxes and negates any inference [Petitioner] acted in good faith.

*Melot*, 732 F.3d 1234 at 1241. Even if trial counsel had moved for judgment of acquittal after trial, it appears entirely unlikely that the motion would have been granted in light of the great weight of evidence against Petitioner.

Second, Petitioner has not shown prejudice resulting from the application of the plain error standard rather than de novo review. On appeal, the Tenth Circuit explained that "a conviction in the absence of sufficient evidence of guilt is plainly an error, clearly prejudiced the defendant, and almost always creates manifest injustice." *Melot*, 732 F.3d 1234 at 1240; *see United States v. Duran*, 133 F.3d 1324, 1335 n.9 (10th Cir. 1998) ("[R]eview under the plain error standard in this case and a review of sufficiency of the evidence usually amount to largely the same exercise."). The Tenth Circuit then concluded that "there is no merit to [Petitioner]'s arguments regarding the sufficiency of evidence supporting his convictions for violating 26 U.S.C. §§ 7201 and 7203." *Melot*, 732 F.3d 1234 at 1240–41. A different standard of review would not have changed the outcome here: regardless of the standard, the evidence was sufficient—indeed, overwhelming—to support Petitioner's convictions.

Petitioner has failed to establish prejudice resulting from the alleged deficiency. I find, therefore, that his claim does not meet the standard for ineffective assistance of counsel under *Strickland*.

**E.       Claim of Ineffective Assistance of Counsel Concerning Multiplicity Issue**

Petitioner claims that trial and appellate counsel "should have raised, but did not raise, that imposing punishment consecutive, instead of dismissing Counts 1, and 3 to 15, prior to sentencing, imposed cumulative and multiple punishment" in violation of the Double Jeopardy Clause.  [CV Doc. 21] at 2; *see* [CV Doc. 22] at 5–7.  Petitioner argues that Counts 1 and 3–15 are multiplicitous and cumulative.  [CV Doc. 22] at 7.  Had either counsel raised this issue on direct appeal, he argues, his sentence exposure would have been limited to five years.[13]  *Id.*

Neither Petitioner's trial counsel nor appellate counsel was constitutionally ineffective for failing to argue multiplicity.  Counsel's failure to raise an issue at trial or on appeal does not constitute ineffective assistance of counsel if the omitted issue is meritless.  *Dennis v. Poppel*, 222 F.3d 1245, 1261–62 (10th Cir. 2000) (agreeing with the state court's rejection of a defendant's ineffective-assistance-of-counsel claim for counsel's failure to raise an issue at trial or on direct appeal, where "none of [the defendant's] underlying claims constituted a 'dead bang winner' and therefore, no prejudice arose as required by *Strickland*"); *Hooks*, 184 F.3d at 1221 (explaining that counsel's failure to raise a meritless issue on appeal does not constitute constitutionally ineffective assistance of counsel).  Here, Petitioner's argument concerning multiplicity of charges and convictions is meritless.

As discussed above, "[m]ultiplicity refers to multiple counts of an indictment which cover the same criminal behavior."  *McCullough*, 457 F.3d at 1162.  An indictment may be multiplicitous when it charges "multiple violations of the same statute from relatively contemporaneous conduct."  *Patterson*, 760 F. Supp. 2d at 1120.  "[T]he central question is often

---

[13] Petitioner names both trial counsel and appellate counsel in this claim, but his allegations only concern the appeal, sentence, and resentencing.  However, the result would be the same regardless of which attorney is implicated in the allegations, as Petitioner fails to show that any counsel was constitutionally ineffective.

whether the underlying conduct is part of the same transaction or comprises *distinct episodes* that can be punished separately." *Id.* (emphasis added). The *Blockburger* test applies where the charges at issue arise from different statutes; it does not apply where the charges arise from the same statute.[14] *Patterson*, 760 F. Supp. 2d at 1121 (citing *Sanabria v. United States*, 437 U.S. 54, 70 n.24 (1978)). Under the *Blockburger* test, double jeopardy does not bar successive prosecution "if each offense for which the defendant is tried or punished contains a separate element not present in the other." *United States v. Farr*, 591 F.3d 1322, 1326 (10th Cir. 2010) (citing *Blockburger v. United States*, 284 U.S. 299, 304 (1932)). The *Blockburger* test not only applies in successive prosecution, but "when the government charges two offenses simultaneously which arise from the same conduct and may have the same elements." *Id.*

As found above, Counts 9–15 are not multiplicitous. Nor are Counts 3–8 multiplicitous. Each involves failure to file income tax returns for a separate year. The conduct underlying each Count is a distinct episode rather than the same transaction and conduct. Therefore, Counts 3–8 are not multiplicitous.

Finally, Counts 1 and 2 are not multiplicitous. In Count 1, the Government charged Petitioner with corruptly endeavoring to impair or impede the due administration of the Internal Revenue laws, in violation of 26 U.S.C. § 7212(a). The Court instructed the jury that a guilty verdict would require (1) "[t]hat [Petitioner] endeavored to obstruct or impede the due administration of the Internal Revenue laws, as charged; and [(2) t]hat [Petitioner] did so corruptly." Jury Instruction No. 5 [CR Doc. 82] at 15. In contrast, the Government charged Petitioner with willfully attempting to evade or defeat the payment of federal income tax under

---

[14] Accordingly, *Patterson* applies to Petitioner's claim as to Counts 3–8 and 9–15, and *Blockburger* applies to the claim as to Counts 1 and 2.

26 U.S.C. § 7201 in Count 2.  The Court instructed the jury that a guilty verdict would require (1) that "[Petitioner] owed substantial income tax; [(2) that Petitioner] intended to evade and defeat payment of that tax; [(3) that Petitioner] committed an affirmative act in furtherance of this intent . . . ; and [(4) that Petitioner] acted willfully, that is, with the voluntary intent to violate a known legal duty."  Jury Instruction No. 7 [CR Doc. 82] at 17.  In comparing the elements in Count 1 with those in Count 2, each offense clearly contains separate elements not present in the other.  *See Farr*, 591 F.3d at 1326.

Petitioner has failed to establish ineffective assistance of counsel under *Strickland* because the omitted argument—multiplicity—is meritless.

### F.     Claim of Ineffective Assistance of Appellate Counsel for Failure to Appeal after Resentencing

Petitioner claims that appellate counsel "should have appealed the new sentence of 14 years where the additional 9 years was substantively unreasonable," rather than filing a § 2255 motion. [CV Doc. 21] at 2; [CV Doc. 22] at 7–9.  Petitioner contends that the Tenth Circuit reversed and remanded his sentence for the sole purpose of correcting the acceptance-of-responsibility reduction.  [CV Doc. 22] at 7, 8 ("[T]he mistake to be corrected on remand was limited to a 2 level increase.").  On remand, Petitioner contends, he should have received a new sentence of "70 months and certainly no more than 87 months."  *Id.* at 8.  He argues that appellate counsel's failure to directly appeal the new sentence was "objectively unreasonable and very ineffective." *Id.*

Petitioner's claim is meritless.  First, Petitioner has not established deficient performance. "If a defendant specifically instructs his counsel to file an appeal and counsel disregards that instruction, [counsel] has acted in a professionally unreasonable manner."  *United States v.*

*Clark*, No. 13-3298, 2014 WL 7331242, at *5 (10th Cir. Dec. 24, 2014) (citing *Roe v. Flores−Ortega*, 528 U.S. 470 (2000). But where a defendant has said nothing to his counsel about an appeal, courts "ask whether counsel in fact consulted with the defendant about an appeal, and if not, whether counsel had a constitutional duty to do so." *Id.* "Such a duty arises only when there is reason to think either (1) that a rational defendant would want to appeal, or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Id.* (internal quotation marks and alterations omitted). Here, Petitioner has not alleged that he specifically instructed appellate counsel to file an appeal. In fact, Petitioner does not allege anything as to his communications with counsel concerning an appeal. And while Petitioner has long demonstrated his desire to litigate as many issues as possible, he has offered nothing to show that he was interested in appealing this issue rather than filing a motion under § 2255. In fact, Petitioner expresses a great deal of regret in having filed the first appeal. [CV Doc. 22] at 9. If Petitioner's accounts show anything, they show that he likely did *not* want to appeal again. I find, therefore, that Petitioner has not established trial counsel's deficient performance under *Strickland*.

Moreover, Petitioner has not established prejudice resulting from the alleged deficiency. Petitioner asserts that the Tenth Circuit limited his remand to correcting the two-level acceptance-of-responsibility reduction, but this is incorrect. The Tenth Circuit found that "the record contains absolutely no evidence supporting the application of the acceptance-of-responsibility reduction but, instead, clearly demonstrates [that Petitioner] did not accept responsibility for his criminal conduct." *Melot*, 732 F.3d at 1245. Accordingly, it held that the corresponding decrease was "clearly erroneous" and instructed the Court to resentence

Petitioner without applying the acceptance-of-responsibility reduction. *Id.* The Tenth Circuit did not limit the Court to resentencing without the acceptance-of-responsibility reduction. *See id.* At resentencing, the Government advanced several arguments as to why Petitioner should receive a sentence of "no less than 168 months"—or 14 years. Sentencing Memorandum [CR Doc. 294] at 11–26. And contrary to Petitioner's assertions, the sentence imposed was not higher than the guidelines range. *See id.* at 11–12. I find that Petitioner has not established a reasonable probability that, but for counsel's failure to appeal the sentence, the result would have been different.

### G. Claim for Ineffective Assistance of Appellate Counsel Concerning Direct Appeal

Petitioner claims that appellate counsel failed to inform him "that if he appealed issues unrelated to the length of his sentence[,] that the real possibility existed [that he] could receive a sentence almost three times the length of the original sentence . . . ." [CV Doc. 21] at 2. Petitioner argues that he would already be out of prison "had [appellate counsel] not appealed issues unrelated to the 5 year sentence." [CV Doc. 22] at 9. And he contends that, if he had "been advised he risked receiving almost three times his 5 year sentence, by appealing issues other than the length of his sentence, [he] would not have risked his 5 year sentence for a much longer 14 year sentence."[15] *Id.*

Petitioner's argument rings hollow. First, it was not his own appeal but the Government's cross-appeal that resulted in reversal of his sentence and, ultimately, his receipt of

---

[15] It is unclear whether this claim also is alleged against trial counsel, as Petitioner contends that neither trial nor appellate counsel explained at any time "that if [Petitioner] appeals issues not related to the length of sent-ence [sic], that [Petitioner] ran the risk of receiving a sentence three times longer than what this Court originally imposed." [CV Doc. 22] at 7. But whether this claim concerns both trial and appellate counsel is of no consequence to my analysis and conclusion.

a much longer sentence.  Petitioner seems to believe that his own appeal somehow triggered the Government's cross-appeal.  *See id.*  But Petitioner has offered nothing to show that the Government would not have appealed the 5-year sentence in the absence of Petitioner's appeal. Petitioner's argument is simply unfounded.

Second, even if Petitioner's appeal alone did expose him to a longer sentence, there is no evidence of prejudice from appellate counsel's alleged failure to warn Petitioner of it.  Quite the opposite.  The District Court held a 4-day jury trial beginning on April 19, 2010.  Shortly after— even before sentencing—Petitioner filed a pro se Notice of Appeal [CR Doc. 85] (executed May 5, 2010), requesting reversal of his conviction.  Clearly, Petitioner intended to appeal his conviction—regardless of counsel's advice. *See* [CR Doc. 85]; *also* [Petitioner's Pro Se] Motion for Records [CR Doc. 103] at 1–2 (requesting that the Court provide free copies of the case records, including the pretrial and trial proceeding transcripts, so that Petitioner could prepare his appeal).  Indeed, the procedural history of Petitioner's criminal case indicates that he filed various pro se motions and frequently took action without counsel. *See, e.g.*, Motion for Mistrial [CR Doc. 98].  Thus, Petitioner has not established prejudice as a result of appellate counsel's alleged deficiency.

### H.    Claim for Ineffective Assistance of Trial and Appellate Counsel as to Criminal Referrals

Petitioner claims that trial and appellate counsel were constitutionally ineffective in failing to seek discovery or move to dismiss all charges on the grounds that there was no Grand Jury Referral or Criminal Prosecution Referral from the Secretary of the Treasury or the Secretary of Agriculture.  [CV Doc. 21] at 2; [CV Doc. 22] at 10–11.  Petitioner argues that the Department of Justice requires both a Grand Jury Investigation Referral and Criminal

Prosecution Referral in order to prosecute a case. [CV Doc. 22] at 10. But here, he argues, the Government did not receive the required referrals. *Id.* He claims the Government was therefore not authorized to prosecute the claims against him, and the District Court lacked subject matter jurisdiction to hear the case. *Id.* at 10–11. Petitioner contends that trial and appellate counsel should have advanced this argument and were ineffective in failing to do so.[16] *Id.*

Petitioner's claim is meritless. First, Petitioner offers nothing—apart from conclusory statements—to show that the appropriate agencies in fact did not refer the case to the Department of Justice for indictment and prosecution. I find that his claim is simply unfounded.

Second, assuming *arguendo* that the matter had not been referred to the Department of Justice, Petitioner has not established ineffective assistance of counsel because his underlying argument is meritless. *See Dennis*, 222 F.3d at 1261–62 (agreeing that *Strickland*'s prejudice prong is not satisfied where the omitted issue is meritless); *Hooks*, 184 F.3d at 1221. Under 18 U.S.C. § 3231, district courts have jurisdiction over all offenses against the laws of the United States. "Absent an express limitation imposed on that jurisdiction by some other statute, § 3231 is the beginning and the end of the jurisdictional inquiry in criminal cases." *United States v. Reed*, No. 13-8073, 2015 WL 545225, at *2 (10th Cir. Feb. 11, 2015) (quoting *United States v. Tony*, 637 F.3d 1153, 1158 (10th Cir. 2011)) (internal quotation marks omitted). Petitioner argues that "offenses under Title 26 are to be enforced by the Secretary of the Treasury at 26 U.S.C. § 7801." [CV Doc. 22] at 10. However, nothing in § 7801 expressly prohibits the District Court's jurisdiction or prosecution by the Department of Justice in the absence of

---

[16] Petitioner also argues that "[t]o the extent a referral of some kind is eventually produced to deflect the issue herein[], [Petitioner] claims that any such Grand Jury Referral, or purported Criminal Prosecution Referral, does not authorize the offenses alleged in Counts 1 through 15." [CV Doc. 22] at 11. Petitioner offers nothing in support of this assertion. The assertion is pure speculation on its face; I reject it as conclusory and find it to be without merit. *See Hall*, 935 F.2d at 1110.

referral. *See Reed*, 2015 WL 545225, at *2 ("Nothing in [the] discretionary language [of 15 U.S.C. § 77t(b)] suggests that an SEC referral is a prerequisite to criminal prosecution by the Attorney General of offenses relating to securities—much less a prerequisite to the district court's jurisdiction over such an offense."). Petitioner also contends that offenses under 15 U.S.C. § 714m(a) are to be enforced by the Secretary of Agriculture. But Petitioner points to no language expressly prohibiting prosecution or the Court's jurisdiction in the absence of a referral, and I find none. *See Bialek v. Mukasey*, 529 F.3d 1267, 1270–71 (10th Cir. 2008) (noting that the Supreme Court in *United States v. Morgan*, 222 U.S. 274, 280 (1911), rejected a defendant's argument that the Government had no basis on which to prosecute violations under the purview of the Department of Agriculture where the Department of Agriculture took no action to refer the case for prosecution). I find, therefore, that Petitioner's claim for ineffective assistance of counsel concerning the lack of criminal referrals is meritless.

## I.     Claims of Ineffective Assistance of Trial and Appellate Counsel Concerning Restitution[17]

Petitioner advances three claims asserting that the restitution order was imposed in violation of his right to effective assistance of counsel—labeled as Grounds Six, Seven, and Eight of his March 2, 2015 supplement. [CV Doc. 21] at 2–3; [CV Doc. 22] at 11–15. First, Petitioner claims that trial and appellate counsel were constitutionally ineffective in "fail[ing] to argue or show that the district court had no authority of Congress to impose an order for

---

[17] It should be noted that, while Petitioner names both "trial counsel" and "appellate counsel" as ineffective, his claims seem to only allege the deficiency of one counsel—Mr. Acton. As to each claim for ineffective assistance of counsel concerning the restitution order, Petitioner claims that his trial counsel and appellate counsel should have challenged the restitution order at sentencing, resentencing, or on direct appeal. [CV Doc. 22] at 11–15. Petitioner's counsel during trial, Mr. Brittain, withdrew as counsel on October 19, 2010, after the jury trial. *See* [CR Doc. 143]. Mr. Acton was appointed as Petitioner's attorney on September 2, 2010—prior to sentencing. *See* [CR Doc. 127]. Accordingly, through Petitioner claims that trial counsel should have challenged the restitution order on sentencing, resentencing, and appeal, it appears that Mr. Acton is the only counsel implicated in in these claims.

restitution in this case." [CV Doc. 21] at 2. Petitioner contends that his counsel should have argued that the Court lacked jurisdiction to impose restitution in favor of the IRS or USDA. [CV Doc. 22] at 12. Second, Petitioner claims that his trial and appellate counsel were constitutionally ineffective in "fail[ing] to argue or show that the D]istrict [C]ourt's order of restitution exceeded the years at issue in the Grand Jury's Fifteen Count indictment and as required to be authorized by the Grand Jury and Criminal Prosecution Referrals." [CV Doc. 21] at 3. Petitioner argues that "[t]he Court had no jurisdiction or authority to order restitution beyond the years alleged in the indictment," but did so regardless. [CV Doc. 22] at 13. Finally, Petitioner claims that his trial and appellate counsel were constitutionally ineffective in "fail[ing] to argue and show that 18 U.S.C. § 3556, 3563(b)(2), 3583(d), and 3614, in regard to the authority of the Court to award restitution to the IRS and USDA, were used and applied to [Petitioner] in a cruel and unusual way in violation of the Eighth Amendment." [CV Doc. 21] at 3; *see* [CV Doc. 22] at 14–15.

As discussed above, a challenge to a restitution order is not cognizable in a motion under § 2255. *Mamone*, 559 F.3d at 1211; *Kaminski*, 339 F.3d at 88; *United States v. Bernard*, 351 F.3d at 361; *Thiele*, 314 F.3d at 402; *Smullen*, 94 F.3d at 26; *Segler*, 37 F.3d at 1137; *see Erlandson*, 528 F.3d at 788; *Satterfield*, 275 F. App'x at 810. Likewise, a challenge to a restitution order brought under the guise of an ineffective assistance of counsel claim is not cognizable in a habeas petition because it does not seek release from custody. *Kaminski*, 339 F.3d at 85 n.1 (2d Cir. 2003) ("[E]ven if [the petitioner] could show that his counsel was constitutionally defective in handling the restitution order, we believe that the district court was without subject matter jurisdiction to grant the petition on that basis."); *Thiele*, 314 F.3d at 402;

*Smullen*, 94 F.3d at 26; *but see Weinberger*, 268 F.3d at 351 n.1. Petitioner's claims here are challenges to the restitution order brought under the guise of ineffective-assistance-of-counsel claims. I find, therefore, that the claims for ineffective assistance of counsel concerning the restitution order are not cognizable in this habeas petition and should be denied.

## VIII.  **Cumulative Error**

Petitioner claims that the cumulative effect of each individual deficiency deprived him of a fair trial. [CV Doc. 2] at 24; [CV Doc. 19] at 12; *see* Reply [CV Doc. 15] at 7–8.

"A cumulative-error analysis aggregates all errors found to be harmless and analyzes whether their cumulative effect on the outcome of the trial is such that collectively they can no longer be determined to be harmless." *Cargle v. Mullin*, 317 F.3d 1196, 1206 (10th Cir. 2003) (internal quotation marks omitted). Such an analysis may be applicable in instances of "legally diverse claims." *Id.* at 1207. However, the cumulative-error analysis "does not apply to the cumulative effect of non-errors." *Smith v. Jones*, 226 F. App'x 814, 816 (10th Cir. 2007) (upholding the rejection of a claim for cumulative error) (quoting *Moore v. Reynolds*, 153 F.3d 1086, 1113 (10th Cir. 1998)). That is, there can be no cumulative error analysis where a court has found no errors to aggregate. *See id.*

Here, I have found no error—harmless or otherwise—on which to base a cumulative error analysis. Therefore, the cumulative error analysis is inapplicable. Accordingly, Petitioner's claim of cumulative error is meritless.

## IX.  **All Other Claims Alleged are Denied as Conclusory**

In his pleadings, Petitioner alleges—without support—various other deprivations of his constitutional rights that arose during his criminal proceedings.

In his Motion and March 2, 2015 supplement, Petitioner claims that trial counsel engaged in scant, if any, pre-trial investigation and trial preparation, apart from the procedures required by the Court. [CV Doc. 1] at 5; [CV Doc. 22] at 3.

In his Reply, Petitioner alleges various failures of trial counsel including, *inter alia*: failure to investigate; failure to investigate witnesses; failure to suppress evidence, failure to properly impeach witnesses; failure to lodge a sufficient objection to the prosecutor's closing argument; improperly siding with Petitioner's guilt during opening statements; failure to properly submit jury instructions; failure to present the primary line of defense at trial; failure to object to the prosecutor's remarks of Petitioner being a tax protestor. [CV Doc. 15] at 2; *see* [CV Doc. 19] at 4.

In his February 5, 2015 supplement, Petitioner contends that the District Court imposed a sentence in in violation of law; resulted from an incorrect application of the sentencing guidelines; was greater than the sentence specified in the applicable guideline range; and departed from the applicable guidelines. [CV Doc. 19] at 4. Petitioner also offers a laundry-list of reasons why his trial counsel was constitutionally ineffective. *Id.* at 10–12 (items a.–n. under the heading "Whether Defendant was Deprived of Effective Assistance of Counsel During Pretrial and Trial Proceedings").

To the extent that any of these assertions has not been addressed above and could be considered separate claims, I reject them as conclusory and find them to be without merit. *See Hall*, 935 F.2d at 1110 ("Conclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based."); *also Fisher*, 38 F.3d at 1147

(rejecting allegations that were "merely conclusory in nature and without supporting factual averments").

## CONCLUSIONS AND RECOMMENDED DISPOSITION

For the reasons set forth herein, I respectfully recommend that Petitioner's § 2255 Motion [CV Docs. 1, 2; CR Docs. 316, 317] and supplements [CV Docs. 19, 20, 22, and 23; CR Docs. 330; 333; 335; and 336] be **DENIED**, and that his action be **DISMISSED WITH PREJUDICE**.

---

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN FOURTEEN DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition, they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any written objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. Objections are limited to <u>20 pages</u> and shall comply with the Local Rules regarding form of documents.** *See* **D.N.M.LR-Civ. 10.1. If no objections are filed, no appellate review will be allowed.**

---

_____
**STEPHAN M. VIDMAR**
**United States Magistrate Judge**